UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENNIS RICHARD WATTERS,

          Petitioner,

   v.

RON HAYNES,

          Respondent.

Case No. C17-00036-LK-SKV

REPORT AND RECOMMENDATION

Petitioner, a state prisoner who is currently confined at Washington Corrections Center in Shelton, Washington, seeks relief under 28 U.S.C. § 2254 from a 2013 judgment and sentence. Dkt. 6. Respondent has filed an answer to Petitioner's amended habeas petition[1] and submitted relevant portions of the state court record. Dkts. 24, 25. Petitioner has not filed a response to Respondent's answer.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's amended habeas petition, Dkt. 6, be DENIED without an evidentiary hearing and that this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED.

---

[1] The Court notes that the amended habeas petition, Dkt. 6, is the operative petition in this action.

REPORT AND RECOMMENDATION - 1

I.      FACTUAL AND PROCEDURAL HISTORY

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to Petitioner's conviction as follows:

> On July 14, 2012, Ethan Mathers and Ryan Mumm consumed heroin and Xanax and drove to a local Safeway parking lot, a popular hangout, in Mathers's red BMW sedan. At the Safeway, Zachary Smoots offered to sell Mathers and Mumm some marijuana. Mathers took the marijuana without paying for it, and he and Mumm drove away.
>
> Mathers and Mumm drove to Blue Stilly Park in Arlington where they smoked the marijuana. Smoots and several friends, including Brittany Glass and Bo Schemenauer, drove around looking for Mathers and Mumm. Smoots caught up with Mathers and Mumm after they left the park, and the two groups got out of their cars and fought for a short period. The window of Mathers' car broke during the fight and Mathers cut his hand while throwing the pieces at Smoots' car. According to Mathers, Brittany[2] kicked a dent in his car and threatened him with a metal pipe, so Mathers kicked her. Mathers and Mumm got back into Mathers's car and drove away.
>
> Mathers was upset about his hand and his car, and he and Mumm discussed meeting up with Smoots again to "get somewhat of a fair fight." Mathers called Smoots and the two groups agreed to meet back at the park later that day.
>
> Mathers and Mumm drove to the home where Mumm was temporarily staying with friends, where they used more heroin and gathered weapons, including a croquet mallet and a black metal bar. Mumm also took a Springfield Armory XD9 9mm handgun from the home. Mathers and Mumm recruited three other friends who accompanied them to the park in a separate car.
>
> Brittany called her father, James Glass, and told him she had been assaulted by Mathers. James planned to go to the park and beat up Mathers and Mumm for assaulting Brittany. However, James admitted he was armed with a .357 Taurus revolver that he planned to shoot at a bonfire later that evening. James also called a friend, Dennis Watters, whom he knew had a concealed weapons permit and always carried a gun.
>
> Watters, James, Brittany, Smoots, Schemenauer, and several other friends and family members of the group met up at a Tesoro gas station near the park and waited. When the group saw Mathers' BMW enter the park, they followed it. The

---

[2] [FN 1 by Court of Appeals] Several witnesses in this case share a last name with other witnesses. For the purposes of clarity we refer to those witnesses by their first name.

REPORT AND RECOMMENDATION - 2

record reflects that approximately 18 people in at least eight separate cars were at the park for the purpose of the fight.

Mathers testified that he grew impatient waiting for Smoots and had turned around to prepare to leave when the group entered the park. Mumm got out of the passenger seat, fired a warning shot into the air, and got back into the car. As Mumm got into the car, a gold Honda Accord driven by Schemenauer's father Ron "gunned it" into the park and slammed into the front of his BMW. At the same time, Watters pulled up in his Ford Ranger truck so that its passenger side was level with the passenger side of the BMW. Mathers testified that the area that the three vehicles occupied was approximately 30 or 40 feet wide and would have accommodated only two or possibly three vehicles passing at a time. Mathers backed up and "squeezed" between the Honda and the Ranger in order to exit the park. As Mumm leaned forward to put the gun down underneath the seat, Watters pointed a gun directly at the BMW's open passenger side window and fired "two or three times." Mumm was hit in the temple. Mathers drove out of the park and towards an AM/PM gas station. Watters followed Mathers and shot at the BMW as Mathers turned into the AM/PM parking lot.

Watters did not testify. However, Watters gave a recorded statement to law enforcement which was admitted at trial. Watters stated that he owned a 9mm Llama handgun and that he brought it to the park at James's request. When Watters entered the park, the BMW headed towards him until the two cars were "bumper to bumper." Mumm, still inside the car, pulled out a gun and pointed it directly at Watters. Watters stated that Mumm fired the gun out of the window and a round hit his side mirror. Mathers backed the BMW up and the BMW passed Watters' truck "rolling by really slow." At that point, Watters stated:

> I grabbed my weapon out, I loaded it, and as they drove by I shot three rounds I believe into his vehicle. I thought I was still hearing shots so I backed up and I turned around and I got on them and stuff and everything. And Jim was in front of me and I was upset that they shot my truck and that they were trying to shoot at me and stuff and everything. And I was trying to get around them so I could stop them. And I don't know what I was going to do but I tried to stop them. Anyways, they wouldn't stop, so I got on them and stuff and I think I rammed the car. And I rammed it into the AM/PM. And I drove off.

Watters reiterated that he fired three shots into the passenger side of the BMW "as quick as I could pull the trigger." When a detective asked, "Where did you think the bullets were going?" Watters responded, "To the passenger." Watters claimed, "I thought I got [Mumm] in the shoulder" and that he had "seen fragments of a body part flying" but did not realize that Mumm had been fatally shot until later. Watters also admitted that he might have shot his own side mirror. He denied shooting at the BMW as it turned into the AM/PM parking lot.

REPORT AND RECOMMENDATION - 3

> Mumm died as a result of a gunshot wound to the head. A firearms expert from the Washington State Patrol Crime Lab testified that the bullet in Mumm's skull and a bullet recovered from the tire of the BMW came from Watters's gun.
>
> The State charged Watters with first degree murder by extreme indifference (Count I) or, in the alternative, second degree intentional murder (Count II) for the shooting of Mumm in the park. The State also charged Watters with first degree assault of Mathers (Count III) and first degree assault of Mumm (Count IV) for shooting at the BMW as it entered the AM/PM. The State sought a firearm enhancement on each count.
>
> At trial, Watters sought and received an instruction on justifiable homicide as to Counts I and II. The State and Watters also agreed that the trial court would give lesser included instructions on first degree manslaughter and second degree manslaughter for Count II. Watters did not request, and the trial court did not give, any lesser included instructions for Count I.
>
> The jury convicted Watters as charged on counts I, III and IV and of the lesser included offense of first degree manslaughter on count II. The jury also returned special verdicts that Watters was armed with a firearm on all four counts. The trial court entered a separate order dismissing count II "without prejudice and subject to reinstatement ... should the Murder in the First Degree conviction be overturned." The trial court sentenced Watters to consecutive standard range sentences totaling 520 months as well as 180 months for the firearm enhancements.

Dkt. 25, Ex. 2 at 14-18.

Petitioner appealed from the judgment and sentence to the Court of Appeals. *Id.*, Exs. 3-6. The Court of Appeals affirmed the convictions for murder in the first degree and assault, but remanded for the Snohomish County Superior Court to vacate the order conditionally vacating Count II (the conviction for first degree manslaughter), finding the conditional order violated double jeopardy.[3] *Id.*, Exs. 2, 7, 8. Petitioner sought review by the Washington Supreme Court presenting the following issues:

> 1. Does the apparent *intentionality* of an actor's conduct differentiate first degree murder by extreme indifference from first degree manslaughter?

---

[3] The Snohomish County Superior Court subsequently issued an order vacating the conditional order and dismissing Count II. *Id.*, Ex. 15 at 358.

REPORT AND RECOMMENDATION - 4

      2. Did the facts of this case warrant a lesser offense instruction on first degree manslaughter following this Court's decision in *State v. Henderson*,[4] which highlights the two crimes' nearly identical concepts of culpability?

      3. Did the Court of Appeals fail to consider the evidence in the light most favorable to the petitioner *as to the issue being raised*—whether a lesser instruction was warranted?

      4. Even considering this Court's decision in *State v. Grier*,[5] given the facts of this case, can the petitioner show that despite conviction on the greater offense, that there was a reasonable probability that, but for counsel's performance, the result would have been different?

*Id.*, Ex. 9, at 152-53.

The Washington Supreme Court denied review without comment on February 10, 2016. *Id.*, Ex. 10. The Court of Appeals issued the mandate on September 30, 2016. *Id.*, Ex. 11.

In July 2016, Petitioner filed a personal restraint petition in the Court of Appeals. *Id.*, Exs. 12-16. The Court of Appeals dismissed the petition on September 27, 2017. *Id.*, Ex. 17. Petitioner did not seek review by the Washington Supreme Court, and the Court of Appeals issued a certificate of finality on December 15, 2017. *Id.*, Ex. 18.

Petitioner filed a second personal restraint petition in September 2018. *Id.*, Ex. 19. The Court of Appeals dismissed the petition as successive and untimely under state law. *Id.*, Ex. 20. Petitioner did not seek review by the Washington Supreme Court, and the Court of Appeal issued a certificate of finality on December 21, 2018. *Id.*, Ex. 21.

In June 2020, Petitioner filed a post-conviction motion in the Snohomish County Superior Court. *Id.*, Exs. 22 & 23. The court transferred the motion to the Court of Appeals for consideration as a personal restraint petition. *Id.*, Ex. 24. On December 8, 2020, the Court of

---

[4] [FN 1 by Washington Supreme Court] 182 Wn.2d 734, 344 P.3d 1207 (2015).
[5] [FN 2 by Washington Supreme Court] 171 Wn.2d 17, 246 P.3d 1260 (2011); *but see Crace v. Herzog*, __ F.3d __, 2015 WL 4773456, at *6 (9th Cir. Aug. 14, 2015) (criticizing *Grier* and granting habeas relief to petitioner whose claim was denied by this Court based on *Grier*).

REPORT AND RECOMMENDATION - 5

Appeals dismissed the personal restraint petition as untimely under state law. *Id.*, Ex. 25. Petitioner did not seek review by the Washington Supreme Court, and the Court of Appeals issued the certificate of finality on March 9, 2021. *Id.*, Ex. 26.

Petitioner signed his original habeas petition in this action on December 29, 2016. Dkt. 1. In February 2017, Petitioner filed his amended habeas petition. Dkt. 6. In March 2017, Respondent moved to stay and abey the amended habeas petition pending completion of Petitioner's state court proceedings. Dkt. 11. Respondent noted that Petitioner had filed a personal restraint petition that was pending in the Court of Appeals. *Id.* Respondent indicated he was unable to obtain the state court files and complete a proper answer to the amended habeas petition until the state court proceedings were complete. *Id.* By order dated April 18, 2017, the Court granted Respondent's motion to stay and abey these proceedings pending completion of Petitioner's state court proceedings in *In re Watters*, Washington Court of Appeals Cause No. 75399-1-I. Dkt. 12. The Court ordered that:

> within thirty days after issuance of the mandate or certificate of finality in the state court proceedings, the parties shall advise the Court whether the federal habeas action is ready to proceed. Once the parties have advised the Court that the stay may be lifted, the Court will set a new briefing schedule.

*Id.*

On December 1, 2021, the Court issued an order noting that a significant amount of time had passed since the Court's order staying proceedings and that the Court had received no information from the parties regarding the status of Petitioner's state court proceedings. Dkt. 17. Accordingly, the Court directed the parties to file a joint status report by December 15, 2021, informing the Court regarding the current status of Petitioner's state court proceedings. *Id.* Respondent filed a status report indicating he believed the relevant state court proceedings had concluded and that the stay of proceedings was no longer necessary. Dkt. 18. By order dated

REPORT AND RECOMMENDATION - 6

December 17, 2021, the Court lifted the stay and directed Respondent to file an answer. Dkt. 19. On February 24, 2022, Respondent filed his answer and relevant portions of the state court record. Dkts. 24 & 25. On March 9, 2022, the Court conducted a status conference with the parties wherein the Court clarified with the parties that the relevant state court proceedings were complete and set a revised briefing schedule to allow Petitioner additional time to file a response to Respondent's answer. Dkt. 26. Petitioner did not file a response to the answer.

## II.   GROUNDS FOR RELIEF

Petitioner identifies the following grounds for habeas relief:

1. "Insufficient counsel, leading witnesses, lies all of prosecutor[']s witnesses, lies from detectives."

Dkt. 6 at 5. In describing the facts in support of his claim, Petitioner states:

> In charging me with murder 1st degree, and taking off the manslaughter 1st degree was a double jeopardy clause, all the lies from state witnesses, I sent you pages and pages of lies from, Detective Biledve, and Detective Dunn. My lawyers not following up on witnesses that Detective Dunn and Biledve doing not one not 2 not 3 not 4 Because each interview was lies upon lies.

*Id.* Petitioner also submitted a supporting memorandum containing additional facts in support of his claim.[6] *Id.* at 17-56.

///

///

---

[6] The Court observes that there are certain words in some portions of the memorandum submitted in support of Petitioner's claim that are not completely legible. *See* Dkt. 6 at 17-56. However, the Court is able to discern the vast majority of the supporting memorandum and to understand Petitioner's arguments despite the few illegible words. It is clear the illegible words appear only in the context of some of the more specific factual allegations supporting Petitioner's claim and do not raise any new claims. Because, as discussed below, it is not necessary to reach to the merits of Petitioner's claim, the Court finds it is not necessary to the resolution of the amended petition to seek additional clarification regarding the few illegible words in the supporting memorandum.

REPORT AND RECOMMENDATION - 7

III.     DISCUSSION

A.     Exhaustion

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

There are two avenues by which a petitioner may satisfy the exhaustion requirement. First, a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in each appropriate state court, including the state supreme court with powers of discretionary review, thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

Second, a petitioner may technically exhaust his state remedies by demonstrating that his "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). If the petitioner is procedurally barred from presenting his federal claims to the appropriate state court at the time of filing his federal habeas petition, the claims are deemed to be procedurally defaulted for purposes of federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion

REPORT AND RECOMMENDATION - 8

because "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (2007). Federal habeas review of procedurally defaulted claims is barred unless the petitioner can either demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 724.

Respondent argues Petitioner failed to properly exhaust his sole ground for habeas relief, that a state procedural law bars review, and the claim is not cognizable as Petitioner fails to show cause and prejudice or actual innocence. Dkt. 24 at 6. As discussed below, the Court concludes that Petitioner failed to properly exhaust his sole ground for habeas relief, that his claim is procedurally defaulted, and that Petitioner fails to show cause and prejudice or actual innocence. Accordingly, federal habeas review of the merits of Petitioner's sole ground for habeas relief is barred.

    1.    *Proper Exhaustion*

        a.    *Ground One: "Insufficient counsel, leading witnesses, lies all of prosecutor[']s witnesses, lies from detectives."* Dkt. 6 at 5.

Petitioner did not properly exhaust his sole ground for habeas relief because he failed to fairly present this claim to the Washington Supreme Court either on direct appeal or on collateral review. On direct appeal, although Petitioner raised a claim of ineffective assistance of counsel in his petition for review to the Washington Supreme Court, his claim challenged trial counsel's decision not to request a lesser included offense instruction. *See* Dkt. 25, Ex. 9 at 156-168. This is not the same ineffective assistance of counsel claim Petitioner presents in his amended federal habeas petition. Construed liberally, the branch of Petitioner's federal habeas claim alleging ineffective assistance of counsel challenges trial counsel's alleged failure to "follow up on

witnesses", failure to object to certain testimony on various grounds including hearsay, speculation or leading, and failure to point out certain issues during closing argument. Dkt. 6 at 5, 17-56. Petitioner also failed to raise the remaining branches of his federal habeas claim, "leading witnesses, lies of prosecutor['s] witnesses, lies from detectives" in his petition for review to the Washington Supreme Court. *See* Dkt. 25, Ex. 9. Accordingly, Petitioner failed to properly exhaust his sole ground for habeas relief on direct appeal.

Petitioner also failed to properly exhaust his sole ground for habeas relief in his personal restraint petitions as he failed to seek review by the Washington Supreme Court for any of these petitions.

2. *Technical Exhaustion*

As discussed above, Petitioner did not properly exhaust Ground One because he did not fairly present the claim to the Washington Supreme Court. This claim is technically exhausted because he failed to raise it in his petition for review to the Washington Supreme Court on direct appeal and to the extent Petitioner raised this claim to the Court of Appeals in any of his personal restraint petitions his state court remedy of filing a motion for discretionary review with the Washington Supreme Court is no longer available to him. Petitioner was required to file his motion for discretionary review within thirty (30) days of the decision dismissing or deciding his personal restraint petition and the time for filing such a motion, for any of his personal restraint petitions, has long since passed.[7] *See* Washington Rules of Appellate Procedure (Wash. R. App. P.) 16.14(c), 13.5A & 13.5; *In re Bonds*, 165 Wn.2d 135, 144, n. 5 (2008); *Cavanaugh v.*

---

[7] The Court notes that Respondent indicates that Petitioner raised the same claim he raises in his amended federal habeas petition to the Court of Appeals in his first personal restraint petition and that he procedurally defaulted the claim when he failed to raise it to the Washington Supreme Court. But regardless of whether Petitioner raised his federal habeas claim to the Court of Appeals in the first instance in his personal restraint petition, the claim is procedurally defaulted as explained herein.

1  *Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) ("the Supreme Court [has] held that failure to
2  comply with a state's appellate rules will also result in a procedural bar to habeas corpus review
3  of alleged federal constitutional error." (citing *Murray v. Carrier*, 477 U.S. 478 (1986))).
4      Furthermore, even if Petitioner did not raise this claim to the Court of Appeals in any of
5  his prior personal restraint petitions, if Petitioner now attempted to raise it in a subsequent
6  personal restraint petition, the state courts would find the claim barred by Washington law.
7  Under Revised Code of Washington (RCW) 10.73.090(1), a petition for collateral attack on a
8  judgment and sentence in a criminal case must be filed within one year after the judgment
9  becomes final, subject to exceptions that do not apply here. *See* RCW 10.73.100. The judgment
10 became final for purposes of state collateral review in this case on the date that the appellate
11 court issued its mandate disposing of the timely direct appeal. RCW 10.73.090(3)(b). Here, the
12 state court issued its mandate well over one year ago. *See* Dkt. 25, Ex. 11. It therefore appears
13 clear that Petitioner would now be time barred from returning to the state courts to present his
14 unexhausted claims. *See* RCW 10.73.090. Moreover, because Petitioner has previously
15 presented a personal restraint petition to the state courts, the state courts are unlikely to entertain
16 another such petition. *See* RCW 10.73.140 (successive petition bar).
17     Accordingly, the Court concludes that Petitioner has technically exhausted, and
18 procedurally defaulted, Ground One.
19     3.    *Cause and Prejudice*
20     Federal habeas review of Petitioner's procedurally defaulted claims is barred unless he
21 can demonstrate cause and prejudice, or a fundamental miscarriage of justice. *Coleman*, 501
22 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, Petitioner must
23 show that some objective factor external to the defense prevented him from complying with the

REPORT AND RECOMMENDATION - 11

1 state's procedural rule. *Id.* at 753; *Murray*, 477 U.S. at 488 (a petitioner can demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the unavailability of a factual or legal basis for a claim, or some interference by officials). To show "prejudice," Petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original). And only in a "truly extraordinary case," the Court may grant habeas relief without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

Petitioner fails to argue or demonstrate that any factor external to the defense prevented him from complying with the state's procedural rules and, thus, he has not demonstrated cause for his procedural default.[8] Because Petitioner has not met his burden of demonstrating cause for his procedural default, the Court need not determine whether there was any actual prejudice. *See Cavanaugh*, 877 F.2d at 1448 (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, Petitioner makes no colorable showing of actual innocence. Petitioner thus fails to demonstrate that his procedurally defaulted claim is eligible for federal habeas review. Therefore, Ground One should be DENIED.

//

//

---

[8] The Court notes that Respondent argues in his answer that *Martinez v. Ryan*, 566 U.S. 1 (2012) does not apply to excuse the procedural default of Petitioner's ineffective assistance of counsel claim. Petitioner does not argue that his ineffective assistance claim in fact qualifies for federal habeas review under *Martinez* and accordingly the Court declines to consider whether *Martinez* is applicable in this case. *Id.*

REPORT AND RECOMMENDATION - 12

B.  **Additional Grounds**

The Court notes that Petitioner includes a reference to double jeopardy in the facts supporting his claim.  Dkt. 6 at 5.  Under Rule 2 of the Rules Governing Section 2254 Cases, Petitioner must specify each ground for relief, the facts supporting the ground for relief, and the relief requested.  Therefore, the Court finds the only cognizable claim before the Court is Ground One.  *See Vrh v. Ndoh*, C20-00581, 2020 WL 2489464, at *1 (E.D. Cal. May 14, 2020) ("Rule 2(c) requires that each ground for relief be clearly stated, along with providing specific factual allegations that support the grounds for relief.").  To the extent Petitioner attempted to raise additional grounds within the facts supporting his claim or in the memorandum filed in support of the Petition, such as a double jeopardy claim, the Court recommends these additional grounds be denied as improperly pled.[9]

C.  **Evidentiary hearing**

Because Petitioner's claim can be resolved by reference to the state court record, an evidentiary hearing is not necessary.  *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

IV.  CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  A

---

[9] The Court also notes it does not appear Petitioner properly presented any double jeopardy claim at *each* level of review at the state court level and as such any such claim does not appear to have been properly exhausted.

petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, the Court concludes that a certificate of appealability should be DENIED.

## V. CONCLUSION

The Court recommends Petitioner's amended federal habeas petition, Dkt. 6, be DENIED without an evidentiary hearing and that this action be DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be DENIED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 22, 2022**.

Dated this 29th day of June, 2022.

S. KATE VAUGHAN
United States Magistrate Judge